Eastern District of Kentucky
FILED

AUG 2 6 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-174-KSF

ROBERT WINCHELL                                                    PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

WARDEN RANDY STOVALL, ET AL.                          RESPONDENTS

\*\*\*     \*\*\*     \*\*\*     \*\*\*

Robert Winchell, an individual presently confined at the Lee Adjustment Center in Beattyville, Kentucky, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the $5.00 filing fee.

This matter is now before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

CLAIMS

The petitioner, who was convicted and sentenced in Vermont, claims that his confinement in a private Kentucky prison operated by the Corrections Corporation of America ("CCA"), instead of a Vermont correctional facility, is illegal.

## ALLEGATIONS OF THE PETITION

The petitioner has submitted a 49-page handwritten petition, which includes a memorandum of law.[1] Record No. 1. The following is a summary or construction of his allegations therein.

The petitioner begins with his criminal convictions for kidnaping, burglary, and assault on December 13, 2002, in the Rutland District Court, Rutland, Vermont, Case No. 1265-9-01-Rdcr, and his being sentenced to 7 to 15 years' imprisonment. He writes that both his conviction and sentence were later affirmed on appeal, and he has not brought any other post-conviction proceedings. On May 6, 2004, the petitioner was transferred to the Lee Adjustment Center, a privately operated prison, which is located in Kentucky and run by the Corrections Corporation of America.

The petitioner states that he and other prisoners immediately challenged their custody in a private Kentucky prison by filing a state habeas action in the Lee Circuit Court, Civil Action No. 04-CI-0008, which was dismissed on September 17, 2004. The instant petitioner complains that he did not get notice of the Lee Circuit Court's dismissal until September 20th, and that was from a law firm which represented the CCA and the Commonwealth of Kentucky and drafted the Order. Although the petitioner refers to the Lee Circuit Court's Order and numerous other documents as being attached to his petition as exhibits, nothing is attached.

The Lee Circuit Court's dismissal was affirmed by the Kentucky Court of Appeals on December 10, 2004. The petitioner asks that this Court take judicial notice of the following words, which the appellate court purportedly wrote in its dismissal:

[1] The Court takes judicial notice that the combined 49-page petition and memorandum is virtually identical to that submitted to this Court by at least one other LAC prisoner from Vermont. In both the instant submission and in *Michael W. DeLance v. Warden Randy Stovall, et al.*, No. 05-CV-175-JMH, each petitioner has merely inserted his own name, signature, and the details of his Vermont crime into what appears to be a Xeroxed copy of someone else's handwritten petition. Petitioner DeLance has attached supporting exhibits to his memorandum, however, while the instant petitioner has not.

2

> Accordingly, habeas corpus relief should be granted only when there is an illegal detention that warrants immediate relief . . . . Silverburg does not, at any time, assert that he is being detained pursuant to a judgment that is void ab initio . . . Silverburg sought to review the constitutionality of KRS 197 . . . These issues should have been addressed in an action for declaratory judgment pursuant to KRS Chapter 418. As Kentucky law provides Silverburg with another more appropriate forum in which to present his grievances, habeas corpus relief is not available. <u>M.M. v. Williams</u>, Ky., 113 S.W. 3d 82 (2003).

Record No. 1 at 6. There is no explanation as to who Silverburg is.

The petitioner states that, meanwhile, on November 9, 2004, he and five other inmates filed for a Declaration of Rights, this time filing in the Franklin Circuit Court, "pursuant to KRS [Kentucky Revised Statute] 418.040-.045, Title 42 U.S.C. §1983, 1985 and 1986 and Title 18 U.S.C. §1961 to 1968 alleging that KRS 197.500 et seq is unconstitutional and two (2) that KRS 197.50 et seq is the result of a continuing pattern of civil and criminal R.I.C.O. activities." *Id.* at 5. The petitioner does not reveal the identity of the other prisoner-litigants but does provide the case number of the Franklin Circuit Court action, 04-CI-01465. With respect to this action also, he refers to attached documents, which could clarify the matter of the parties and other issues, but they are not actually attached.

The petitioner claims that he and the other five prisoners uncovered substantial evidence of CCA's "civil and criminal corruption in America" for presentation to the court in No. 04-CI-01465. The petitioner goes on to give the history of the CCA in Kentucky beginning in 1986 and alleging bribery; secret deals; two Kentucky Attorney General opinions proscribing private prisons (Nos. 84-356 and 90-115); and repeated influence-peddling by making illegally excessive donations to candidates who were elected in two recent state elections. On February 21, 2005, unidentified "plaintiffs" in the Franklin action purportedly presented evidence of an illegal contribution to the

3

successful campaign of Kentucky's current Governor and Lt. Governor, and the petitioner suggests that an effort was made to cover it up, as the hard-drive with the records disappeared on February 27, 2005. Much of his argument and purported attached exhibits relate to such financial inquiries into the CCA and its corporate structure.

On March 22, 2005, the Franklin Circuit Court allegedly issued its Order of Dismissal. On March 30th, the petitioner alleges, he received "the fabricated March 22, 2005 Order of Dismissal and forged signature of Hon. William Graham, Judge Franklin Circuit Court." The petitioner and the other prisoners purportedly noted a discrepancy in the judge's signature; he asks this Court to note the same; and he alleges that they have complained to the Kentucky Judicial Conduct Commission and the Kentucky Administrative Office of the Courts.

In his initial, lengthy pleadings, the petitioner claims that (1) his rights under the Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution have been violated; (2) KRS 197.500 is repugnant to numerous sections of the Kentucky Constitution; (3) the establishment and use of KRS 197.500 is not only unconstitutional, but is also the result "of a civil and criminal syndicate and R.I.C.O. activities"; (4) his custody by persons who are not representatives of Kentucky or Vermont is unlawful; (5) his federal and state rights to due process and equal protection were violated by the respondents' engaging in R.I.C.O. activities during the state actions, including *ex parte* communications, three hearings being had without his presence, the denial of a hearing requested by him, no notice of the dismissal by the clerk, the drafting of the dismissal order by the state government's private attorney, and the forged dismissal Order in case No. 04-CI-01465; (6) his federal and state constitutional rights and state statutes are violated by his continuing in the custody of an "unauthorized entity"; and (7) there has been a deliberate exercise of power without any

4

reasonable justification in the service of a legitimate governmental objective. The petitioner's memorandum of law contains supporting quotations from both the state and federal constitutions, state statutes, and miscellaneous case law.

For relief, the petitioner requests (1) a declaratory judgment declaring KRS 197.500 unconstitutional; (2) a permanent injunction barring the CCA and other private prison vendors from operating in Kentucky; (3) the petitioner's immediate release; and (4) an Order directing the state of Vermont to either take custody of its prisoners or release them.

DISCUSSION

The issue herein is quite clear. The petitioner is a Vermont state prisoner whose claim is that his current incarceration in a prison which is privately owned and located out-of-state, in the Eastern District of Kentucky, is unconstitutional under both state and federal law. The Court's jurisdiction to decide the matter, however, is less clear. Before the Court can examine the claim on the merits, the Court must examine the limits of its jurisdiction to do so.

First, as to the Kentucky-law-based claims, it is well established that violations of state law do not provide a basis for federal habeas relief; such violations must be remedied in the state courts. *See Stewart v. Lane*, 60 F.3d 296, 302 (7th Cir. 1995). Therefore, the claims rising from state statutes, the Kentucky Constitution and relevant case law are subject to summary dismissal. As to the claim that the petitioner's transfer to and continuing custody in the private CCA institution are violative of the United States Constitution, this Court may exercise its §2241 jurisdiction to hear such a matter only in certain circumstances.

The instant petitioner's federal claims have been presented to district courts before, and they have arrived in a variety of postures. In *White v. Lambert*, 370 F.3d 1002 (9th Cir.) *cert. denied*, 125

5

S.Ct. 503 (2004), the United States District Court in the Eastern District of Washington had been presented with a similar petition pursuant to 28 U.S.C. §2241, by a Washington prisoner who was transferred to a private institution in Colorado. The appellate court affirmed the decision of the lower court which had held that §2254 was the proper statutory basis for the federal court's jurisdiction. *Id.* at 1004.

In *White*, the Ninth Circuit noted that its holding was consistent with the Second, Third, Seventh, and Eighth Circuits, but contrary to the Tenth Circuit's opinion in *Montez v. McKinna*, 208 F.3d 862, 869-71 (10th Cir. 2000) (§2241 is the proper vehicle). *Id.* at 1005, n.1. Further, the Ninth Circuit also cited *Greene v. Tennessee Dep't of Corr.*, 265 F.3d 369 (6th Cir. 2001), *cert. denied* (2002), and described the *Greene* court's position therein as "allowing claim to proceed under §2241 without any discussion as to why appropriate." *Id.* Additionally, there is authority for treating such claims as arising under 42 U.S.C. §1983. *See, e.g., Healy v. Wisconsin*, 65 Fed.Appx. 567 (7th Cir. 2003) (unpublished); *Doty v. Litscher*, 40 Fed. Appx. 291 (7th Cir. 2002) (unpublished).

Even though there is conflict between the courts in which of these different statutory vehicles are used, on the instant issue of the legality of transfers of state prisoners to out-of-state private prisons, however, a survey of federal cases reveal two shared commonalities. First, the prisoner litigant must satisfy some sort of exhaustion requirement prior to filing any action in federal court. Second, none of the courts which have reached the merits of these claims have found any violation of the prisoner's federal rights.

It has long been the law that all prisoners challenging their custody as being unconstitutional under 28 U.S.C. §2241 are required to exhaust matters administratively and that all state prisoners under 28 U.S.C. §2254 are required to exhaust their state court remedies. Additionally, since 1996,

6

it has been a statutory requirement that plaintiffs proceeding under 42 U.S.C. §1983 must also exhaust whatever administrative remedies are available. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); *Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980); 42 U.S.C. §1997e(a).

The district courts which have addressed the issue before the Court today routinely trace the prisoner's efforts in the record before it, before going on to address the merits of the claims. *See e.g., Greene* 265 F.3d at 370; *White*, 370 F.3d at 1004. Moreover, such a claim may be dismissed for failure to exhaust. *See Templeton v. O'Dell*, 2002 WL 1752211 at n.2 (D.Minn. 2002) (not reported). Yet the instant petitioner does not allege or demonstrate that he pursued his claims to exhaustion in state courts.

The Supreme Court of Kentucky is not mentioned as ever having entertained the instant claim in the state proceedings. "It is well recognized that a state-convicted prisoner must first exhaust his available and adequate state remedies as a condition precedent to federal habeas relief." *Wiley v. Sowders*, 647 F.2d 642, 646 (6th Cir. 1981) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). A review of the instant record does not indicate that these issues have ever been presented to Kentucky's Supreme Court by this litigant. The state's highest court must have an opportunity to review the claims. *Castille v. Peoples*, 489 U.S. 346 (1989).

Because Petitioner Winchell has not demonstrated that he presented his arguments to Kentucky or Vermont's highest courts or any other state-provided body to the point of exhaustion prior to his filing herein, he has failed to satisfy a prerequisite and thereby failed to prepare a record in this case. Accordingly, the Court will not address the issue on the merits.

7

Moreover, the instant petitioner's failure to proceed to the Supreme Court of Kentucky also raises the *Rooker-Feldman* doctrine. The proper remedy after a Kentucky Court of Appeals decision is to proceed to the Supreme Court of Kentucky, not to shift to the federal court. The *Rooker-Feldman* doctrine, "a combination of the abstention and *res judicata* doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

Additionally, the petitioner is advised that should his constitutional and other federal challenges reach a federal court on the merits, he will have a heavy burden on the merits. There is, in the aforecited case law, no authority finding that the allegations herein state a claim upon which this Court may grant relief. In fact, these claims have been rejected on the merits unanimously. *See White*, 370 F.3d at 1013; *Doty*, 40 Fed.Appx. at 292; *Healy*, 65 Fed.Appx. at 569; *see also Karls v. Hudson*, 182 F.3d 932 at **1 (10th Cir. 1999) (unpublished), *cert. denied*, 528 U.S. 987.

This Court concludes that the instant petitioner is not properly before the Court, and even if he were, he has failed to state a federal claim upon which this Court may grant him relief. Prisoners do not have a liberty interest in being confined at any particular prison. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Nor has a court found that a state somehow loses jurisdiction over its prisoners when it transfers them out of state for service of their properly imposed sentence. *See Joyner v. Henman*, 755 F.Supp. 982, 985 (D.Kan. 1991) ("[T]here is no merit in petitioner's claim that the state of Pennsylvania lost all jurisdiction when it transferred him [to the U.S. Penitentiary in

8

Leavenworth, Kansas]"). The facts and the Court's resolution herein are most consistent with *Lambert v. Sullivan*, 35 F.Supp.2d 1131 (E.D. Wis. 1999), and the Court adopts that opinion as if set out in full.

CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     The instant petition for writ of habeas corpus is **DENIED**;

(2)     the petition is **DISMISSED** and a contemporaneous Judgment shall be entered in favor of the respondents.

This the __26'__ day of __Aug r 2 r__, 2005.

_____

KARL S. FORESTER, SENIOR JUDGE